Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
(609) 986-1120

Robert G. Sugarman (*pro hac vice pending*)
Yehudah Buchweitz (*pro hac vice pending*)
David Yolkut (*pro hac vice pending*)
Jessie Mishkin (*pro hac vice pending*)
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERGEN ROCKLAND ERUV ASSOCIATION, INC., YISROEL FRIEDMAN and S. MOSHE PINKASOVITS<br><br>              Plaintiffs,<br><br>    -against-<br><br>THE TOWNSHIP OF MAHWAH<br><br>              Defendant. | Civ. No. _____<br><br><br><br>COMPLAINT |

Plaintiffs Bergen Rockland Eruv Association, Inc. ("BREA"), Yisroel Friedman and S. Moshe Pinkasovits (collectively "Plaintiffs"), by their attorneys, Weil, Gotshal & Manges LLP, allege for their Complaint herein, as follows:

## INTRODUCTION

1.  This action arises from The Township of Mahwah's (the "Township" or "Mahwah") intentional deprivation of Plaintiffs' rights and liberties under the First and Fourteenth Amendments to the United States Constitution and multiple federal statutes. [1]

---

[1] Plaintiff BREA's principal office address is P.O. Box 488, Monsey, New York 10592. Plaintiff Yisroel Friedman's address is 2 Eros Drive, Airmont, NY 10952-4114. Plaintiff Moshe S. Pinkasovits' address is 4 Amanda Court, Airmont, NY 10952-4104. Defendant Township of Mahwah's address is 475 Corporate Drive, Mahwah, NJ 07430.

2.     BREA, the individual Plaintiffs, and other Jewish residents of Rockland County, New York have sought to establish an eruv in parts of Bergen County, New Jersey that would allow Rockland County Jews with certain sincerely held religious beliefs, and who reside on or near the New York-New Jersey state lines, to carry or push objects from place to place within a designated unbroken area during the Sabbath and on Yom Kippur (the "Eruv").[2]

3.     Many Jews have the sincerely held religious belief that, without an eruv, they are not permitted to push or carry objects outside their homes on the Sabbath and Yom Kippur.  As a result, men or women who are confined to wheelchairs or who have small children or relatives confined to wheelchairs cannot attend Sabbath and Yom Kippur services or engage in any other activity outside of their homes unless, in limited circumstances, they choose to hire non-Jewish individuals to push their strollers and wheelchairs.  Likewise, those who hold such beliefs are not permitted to carry items such as food, water bottles, house keys, personal identification, books, prayer shawls, or reading glasses on those days outside of their homes.

4.     Accordingly, there are hundreds of eruvin (the plural form of eruv) throughout the United States, and scores in the New York-New Jersey area alone—including in Bergen, Essex, Mercer, Middlesex, Monmouth, Morris, Ocean, and Union Counties in New Jersey; in Nassau, Suffolk, Westchester, Rockland, and Albany Counties in New York; and in each of the five boroughs of New York City.

5.     In 2015, representatives of the Vaad haEruv – Plaintiffs' designated agent for the planning, organization, and construction of an Eruv – approached Orange & Rockland Utilities, Inc. ("O&R") and requested permission to affix thin PVC plastic pipes known as "lechis," which

---

[2] Pursuant to Local Civil Rule 40.1(c), this case is related to *Friedman et al. v. The Borough of Upper Saddle River et al.*, 2:17-cv-05512-JMV-CLW, pending before District Judge John M. Vasquez and Magistrate Judge Cathy L. Waldor.  These two cases involve overlapping Plaintiffs, overlapping facts, and overlapping applicable law.

are necessary for the establishment of the Eruv, to utility poles in the Township owned by O&R's New Jersey utility subsidiary Rockland Electric Company ("REC," and together with O&R, the "Utility Company").  The Eruv created by the installation of these lechis would expand an Eruv already in place in Rockland County, such that it would encompass Plaintiffs' homes.  The Utility Company granted express licenses to Vaad haEruv to affix lechis to the Utility Company's poles in the Township.

6.    On or about June 1, 2015, the Vaad haEruv and REC entered into a License Agreement (annexed hereto as Exhibit A), through which the Utility Company granted an express license to allow the Vaad haEruv to affix lechis to certain of the Utility Company's poles in Bergen County for the purpose of creating an Eruv.

7.    Pursuant to a written agreement, and under the supervision of Township Police (who the Vaad haEruv paid in full for their work supervising the installation of the lechis), the Vaad haEruv began a partial Eruv expansion into Mahwah in June 2017.  As depicted below, the expansion covers only a minute portion of Mahwah.



3

Upon information and belief, there was no other way for the Vaad HaEruv to complete the Eruv other than through a small extension into adjacent Bergen County.[3]

8.     As a result of the Eruv's expansion to include a small portion of Mahwah, for the past five Sabbaths, Plaintiffs have been able to more fully practice their religion. Specifically, over the past five Sabbaths, Plaintiffs have been able to carry items such as prayer shawls and prayer books to their synagogue and have been able to bring food, games, gifts, and books to the homes of fellow community members. Plaintiffs can also push strollers and wheelchairs within the confines of the newly expanded Eruv. Plaintiffs have been able to more fully practice their religion, both at their synagogue as well as at communal activities that take place in the homes of fellow community members on the Sabbath.

9.     The Township, however, has unlawfully threatened Plaintiffs' constitutional, civil, and contractual rights by, *inter alia*, demanding that the lechis be removed; threatening to issue summonses in connection with lechis that are legally affixed to the Utility Company's poles within the Township; and officially authorizing the issuance of such unlawful summonses, beginning as of August 18, 2017, by passing a motion of the Township Council, over the sensible objections of Mahwah Mayor William C. Laforet, at a Town Council meeting held on August 10, 2017.

10.     Before succumbing to fear, xenophobia, and religious animus, the Township recently recognized the constitutional validity of eruvin. Mayor Laforet issued a July 19, 2017 public statement on the Township's website recognizing that "because of several Federal Law suits," "[the Utility Company is] obligated to allow these ERUV markings, but they have NO OBLIGATION to notify the municipality" (emphasis in original). Mayor Laforet further noted

_____

[3] A copy of this map is annexed hereto as Exhibit K.

that "[Mahwah] cannot do anything about the installation of these plastic pipes on these utility poles establishing a[n] ERUV." *Id.* In fact, Mayor Laforet's statement links to *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002), governing precedent establishing Plaintiffs' constitutional right to the eruv. Mayor Laforet's statement is annexed hereto as Exhibit B.

11. In response to an openly anti-Semitic campaign against the Eruv from certain residents of Mahwah and neighboring municipalities, however, the Township sharply reversed course. Mahwah initially sought to justify its change in position – which, by Mahwah's own admission, conflicts with controlling precedent from the Third Circuit Court of Appeals – by sending a letter from the Town Engineer dated July 21, 2017, frivolously asserting that the lechis are "device[s] for visual communication," and thus violate a Township Zoning Ordinance precluding signs on utility poles (the "July 21 Letter").

12. Recognizing the futility of that position, Mahwah then hastily proposed a last minute, new ordinance in the lead-up to a town meeting regarding the Eruv specifically. Plainly discriminatory in its motivation, the proposed Ordinance No. 1812 – modeled directly on an unconstitutional ordinance passed in 2015 in the neighboring municipality of Upper Saddle River – would prohibit "affix[ing] any sign, advertisement, notice, poster, paper, device or other matter to any public utility pole . . . except as may be authorized or required by law."

13. In fact, recent Facebook comments from Township Council President Robert Hermansen openly acknowledged the discriminatory, prejudicial, and invidious motivation behind the proposed ordinance. In Mr. Hermansen's words:

> When I found out about the items be [sic] on our utility poles I contacted the Mayor and Attorney immediately to find out what we would be able to do and what we could not do. *We started researching all the different places in different towns that have been affected by this issue and things that were unsuccessful and*

*potentially successful in those towns. We then started working on the ordinances and looking at ordinances that would be effective [sic] our township.* If you look at the agenda that will be out for the meeting after our audience meeting that we're having Tuesday night you will see several of the ordinances that are being discussed on this site.

14.     On August 10, 2017, following up on the threats set forth in the July 21 Letter, the Township's Council passed a motion authorizing the Township's zoning officer to issue summonses, beginning as of August 18, 2017, for each lechi as a purported "violation" of a plainly inapplicable Zoning Ordinance.   If issued, any such summons(es) would be entirely unlawful.

15.     Through its actions, which are unsupported by any local, state, or federal law, Mahwah has also unlawfully interfered with private contracts with the Utility Company that were entered into for the purpose of establishing the Eruv.  If the Township is allowed to infringe on Plaintiffs' religious liberty in this manner, Plaintiffs and other members of the observant Jewish community will sustain immediate irreparable injury, as further described below.

16.     Plaintiffs bring this action to obtain, *inter alia*, (a) a declaration that (i) there is no local, state, or federal law that either prohibits the affixation of the lechis to certain poles in Mahwah or that requires municipal approval for such attachments, (ii) proposed Township Ordinance No. 1812, if enacted, may not be enforced so as to prevent Plaintiffs from maintaining the Eruv; and (b) the private third parties should therefore be free and clear to implement the contracts to permit such action.

## JURISDICTION AND VENUE

17.     Subject matter jurisdiction over this action is conferred upon this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367.

18.     Personal jurisdiction over this action is conferred upon this Court because Defendant is located in this District, because the acts complained of occurred in this District, and

pursuant to NJ Rev Stat § 2A:4-30.68.

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the Defendant is located in this District and because the events giving rise to the claim occurred in this District.

## THE PARTIES

20.    Plaintiff BREA is an association organized as a charitable corporation under New York State's Not-for-Profit Corporation Law.  Its principal office is located in Rockland County, New York.  Plaintiff BREA's members would suffer immediate and irreparable harm if the Eruv is removed.

21.    Plaintiff Yisroel Friedman ("Friedman") is an individual residing in Airmont, New York.

22.    Plaintiff S. Moshe Pinkasovits ("Pinkasovits") is an individual residing in Airmont, New York.

23.    Defendant Mahwah is a township in Bergen County, New Jersey.

## FACTUAL ALLEGATIONS

**I.    THE NEED FOR AN ERUV IS AN IMPORTANT RELIGIOUS BELIEF AND PROMOTES PRACTICE OF THE JEWISH FAITH.**

24.    An eruv, under Jewish law, is a largely invisible unbroken demarcation of an area. Eruvin have existed under Jewish law for more than two thousand years.  An eruv is created by, among other things, using existing telephone or utility poles and wires, existing boundaries, and strips of wood or plastic attached to the sides of certain of the poles, known as "lechis."

25.    The lechis used in the Eruv at issue are half-inch thick PVC plastic pipes, and are affixed vertically to the poles.  These pipes are unobtrusive and typically unnoticeable to a casual observer.  Indeed, lechis have been described by the Second Circuit Court of Appeals as "nearly invisible."

7

26.     Many Jews hold the sincere religious belief that, without an eruv, they are not permitted to push or carry objects outside their homes on the Sabbath and Yom Kippur.  Eruvin allow Jews with such sincerely held religious beliefs to carry or push objects from place to place within the area on the Sabbath and Yom Kippur.  Thus, within the boundaries of an eruv, these people may push baby carriages, strollers, and wheelchairs and may carry books, food, water, house keys, identification, prayer shawls, reading glasses or other items, to synagogue and other locations outside of their own homes.  The ability to carry these and other items creates a safer environment and permits observant Jews to mingle more freely with their neighbors, thereby facilitating the friendship, camaraderie, and community that is so central to the Jewish and American traditions.

27.     Plaintiffs live in an area of New York State that directly borders Mahwah.  If Mahwah proceeds with its threatened takedown of the lechis that are part of the Eruv, Plaintiffs would immediately lose access to the Eruv, and accordingly would be unable to push or carry any objects, such as those described above, outside their homes on the Sabbath and Yom Kippur.  If even one week passes without an eruv, Plaintiffs and other community members will be deprived of the ability to fully and freely practice their religion on the Sabbath, constituting an irreparable injury.

28.     Plaintiff Friedman, for example, would be harmed by Mahwah's unlawful takedown of the lechis due to his inability, in the absence of an eruv, to push a stroller on the Sabbath and Yom Kippur.  Friedman has two young children—one infant and one toddler— neither of whom are able to walk to the family's synagogue on the Sabbath.  As a result of now being able to push a stroller, Friedman and others similarly situated are now able to attend synagogue and spend time on the Sabbath with other community members outside of their

homes.  Without the eruv, some family members would be forced to stay home for the entirety of the Sabbath to care for their young children.

29.     Other members of Plaintiffs' community would be harmed by Mahwah's unlawful takedown of the lechis due to their inability, in the absence of an eruv, to push wheelchairs on the Sabbath and Yom Kippur.  One community member, for example, has an elderly, close relative who is dependent on a wheelchair.  Within the confines of the Eruv, a wheelchair may be pushed to synagogue.  If Mahwah were to remove the lechis that facilitate the Eruv, a wheelchair-dependent individual would be confined to his or her home for the duration of the Sabbath or Yom Kippur.

30.     Recent press coverage provides additional examples of individuals to whom eruvin are absolutely critical.  For instance, one recent article tells the story of Tenafly resident "Barry Honig, who is visually impaired and needs his seeing-eye dog and cane to get to synagogue," and therefore depends on an eruv to carry these objects and attend synagogue.[4]

31.     A multitude of eruvin have been established nationwide and worldwide.  The first eruv in the United States was established in 1894 in the city of St. Louis, Missouri.  Since then at least twenty-eight out of the fifty states now contain one or more municipalities with an eruv. These include, among many others:  Cherry Hill, East Brunswick, Englewood, Fort Lee, Linden, Maplewood, Marlboro Township, Paramus, Passaic-Clifton, Rutherford, Teaneck, Bergenfield, New Milford, Edison, Highland Park, Parsippany, Elizabeth, West Orange, Livingston, Long Branch, Tenafly, and Ventnor, New Jersey; Westhampton Beach, Southampton, Quogue, Huntington, Stony Brook, Patchogue, East Northport, Merrick, Mineola, North Bellmore,

---

[4] *See* Tom Nobile, *Attorney: Mahwah PD Supervised Eruv Installation*, THE BERGEN RECORD, July 29, 2017, *available at* http://www.northjersey.com/story/news/bergen/mahwah/2017/07/28/attorney-mahwah-pd-supervised-eruv-installation/521157001/.

Plainview, Great Neck, Valley Stream, West Hempstead, Long Beach, Atlantic Beach, Lido

Beach, Roslyn, Searingtown, Forest Hills, Kew Gardens, Belle Harbor, Holliswood, Jamaica

Estates, New Rochelle, Scarsdale, White Plains, Albany, and Manhattan, New York; Bridgeport,

Hartford, Norwalk, Stamford, New Haven, and Waterbury, Connecticut; Boston, Cambridge,

Springfield, and Worcester, Massachusetts; Providence, Rhode Island; Berkeley, La Jolla, Long

Beach, Los Angeles, Palo Alto, San Diego, and San Francisco, California; Pittsburgh,

Philadelphia, and Lower Merion, Pennsylvania; Chicago, Buffalo Grove, Glenview-Northbrook,

and Skokie, Illinois; Ann Arbor, Southfield, Oak Park, and West Bloomfield Township,

Michigan; Baltimore, Potomac, and Silver Spring, Maryland; Charleston, South Carolina;

Birmingham, Alabama; Atlanta, Georgia; Las Vegas, Nevada; Miami, Ft. Lauderdale, Boca

Raton, Boyton Beach, Deerfield Beach, Delray Beach, and Jacksonville, Florida; Denver,

Colorado; Cleveland, Cincinnati, and Columbus, Ohio; Portland, Oregon; Memphis and

Nashville, Tennessee; New Orleans, Louisiana; Dallas, Houston, and San Antonio, Texas;

Richmond, Virginia; Seattle, Washington; Phoenix, Arizona; and Washington, D.C.  Most

recently, eruvin have been established in Plano and Austin, Texas; Scottsdale, Arizona; and

Omaha, Nebraska.

      32.    On the occasion of the inauguration of the first eruv in Washington, D.C.,

President George H.W. Bush wrote a letter to the Jewish community of Washington in which he

stated:  "there is a long tradition linking the establishment of eruvim with the secular authorities

in the great political centers where Jewish communities have lived. . . . Now, you have built this

eruv in Washington, and the territory it covers includes the Capitol, the White House, the

Supreme Court, and many other federal buildings.  By permitting Jewish families to spend more

time together on the Sabbath, it will enable them to enjoy the Sabbath more and promote

traditional family values, and it will lead to a fuller and better life for the entire Jewish

community in Washington.  I look upon this work as a favorable endeavor.  G-d bless you."  *See*

Letter of President George H.W. Bush, annexed hereto as Exhibit C.

33.     On April 4, 2006, the Mayor and City Council of Sandy Springs, Georgia, issued

a proclamation in which the Mayor and City Council members declared:  "Whereas . . . it is our

desire to recognize and support the Congregation's efforts to maintain an eruv within the vicinity

of their synagogue; Now, therefore, be it proclaimed, that the desire of the Congregation . . . to

create an eruv within the vicinity of their synagogue upon the public roads, sidewalks, and

rights-of-way of Sandy Springs is hereby recognized within the limits allowed by the law."

34.     On September 6, 2007, the President and Board of Commissioners of Cook

County, Illinois, passed a resolution creating the Glenview-Northbrook community eruv, which

provided in part that an eruv "does not contravene any federal, state, or local law and will not

violate any existing property rights."

35.     On February 15, 2008, Town of Oyster Bay Supervisor John Venditto presented a

citation, signed by all members of the town board, to Rabbi Ellie Weissman of the Young Israel

of Plainview, recognizing the expanded eruv for parts of Plainview, Old Bethpage, and

Hicksville.  The citation recognized "the important role that The Young Israel of Plainview

contributes to the community" and wished "all the members of The Young Israel of Plainview

good health and blessings in the future on the expanded ERUV."

36.     When construction to widen the lanes of the 405 Freeway in Los Angeles,

California, threatened to interfere with the local eruv in late 2009, the Metropolitan

Transportation Authority and the California Department of Transportation worked hand-in-hand

with the local eruv administrators to ensure that the Los Angeles eruv would remain up every

Sabbath.  The level of accommodation was so great that Los Angeles eruv administrator Howard Witkin noted:  "The level of help we've had, from the Roman Catholic permit people at [the California Department of Transportation] . . . to the Muslim line inspector along the freeways who gave us engineering help. . . . The level of deference and courtesy and kindness—it makes you feel good that you live in America."  *See* Mitchell Landsberg, *Massive 405 Freeway Project Respects the Boundaries of a Jewish Tradition*, L.A. TIMES, July 4, 2011, *available at* http://articles.latimes.com/2011/jul/04/local/la-me-405-eruv-20110704.

37.     In December 2010, Queens Borough President Helen Marshall celebrated the expansion of the eruv in central Queens, New York, to six new neighborhoods.  At a ceremony held at Queens Borough Hall, Borough President Marshall said of the newly-extended eruv:  "It speaks to the great multi-ethnic community we have here in Queens.  We have the most multi-ethnic community in the United States."  *See* Bob Doda, *Eruv extended to six neighborhoods*, THE QUEENS COURIER, Dec. 6, 2010, *available at* http://qns.com/story/2010/12/06/eruv-extended-to-six-neighborhoods.

38.     Eruvin have also been created throughout the United States on public and private university campuses, with university administrators and local utility companies providing substantial assistance to campus Jewish communities in their effort to establish an eruv.  Thus, special university campus eruvin exist in and around:  Rutgers University (New Brunswick, New Jersey); Princeton University (Princeton, New Jersey); Cornell University (Ithaca, New York); the University of Pennsylvania (Philadelphia, Pennsylvania); the University of Maryland (College Park, Maryland); Johns Hopkins University (Baltimore City, Maryland); Brandeis University (Waltham/Boston, Massachusetts); Harvard University (Cambridge, Massachusetts); Yeshiva University (New York, New York); and Yale University (New Haven, Connecticut).

*See, e.g.*, Elli Fischer, *JLIC Spearheads Efforts to Enhance Campus Communities*, ORTHODOX UNION.  The Cornell University Jewish community worked with the sheriff of Tompkins County, New York, to establish its eruv.  *See* Elizabeth Krevsky, *Orthodox Jewish Community Builds Ehruv on Campus*, THE CORNELL DAILY SUN, Jan. 29, 2010, *available at* https://oujlic.org/the-cornell-daily-sun-orthodox-jewish-community-builds-ehruv-on-campus/.

39.   Mahwah's neighboring towns have recently recognized the near-invisibility, ubiquity, and constitutionality of eruvin.  In January 2015, then-mayor of Montvale, New Jersey, Mayor Fyfe, issued a public statement recognizing that an eruv is constructed "so as to be unobtrusive and nearly invisible to the general public," and that it "has been universally held that the construction of an eruv serves 'the secular purpose of accommodation' and does not violate the separation of Church and State."  As that statement correctly noted, "[a]bsent any compelling safety concerns, there is little role for Montvale to play in what amounts to a private negotiation between Orange and Rockland and the community that requested the eruv."  *See* Eruv Statement by Mayor of Montvale, annexed hereto as Exhibit D.

40.   As noted above, Mayor Laforet himself issued a public statement, posted on the Township's website, recognizing that "[the Utility Company is] obligated to allow these ERUV markings," is under "NO OBLIGATION to notify the municipality," and that "[Mahwah] cannot do anything about the installation of these plastic pipes on these utility poles establishing a[n] ERUV."

## II.   PLAINTIFFS SEEK TO ESTABLISH THE ERUV.

41.   Plaintiffs' community representatives – including the Vaad haEruv and Rabbi Chaim Steinmetz – have obtained valid licenses from the Utility Company to attach lechis to utility poles in the Township.  With these valid licenses in hand, in May 2017, Rabbi Steinmetz began the work to expand an existing eruv to parts of Mahwah by attaching lechis to utility

poles; however, shortly thereafter, Township Police ordered Rabbi Steinmetz to cease work, advising that construction required a Police escort to ensure traffic and construction safety.

42.    In order to comply with the Township's safety directive, the Vaad haEruv signed a construction agreement (the "Agreement") with the Township, whereby the Township agreed to supply the Vaad haEruv with police supervision at certain hourly rates for the duration of construction, and Vaad haEruv agreed to provide the Township with acceptable proof of insurance coverage.  A copy of the Agreement is annexed hereto as Exhibit E.

43.    Township Police subsequently advised Rabbi Steinmetz that the Vaad haEruv had provided the Township with adequate proof of insurance under the Agreement and that Eruv construction could continue.

44.    Having received approval, Rabbi Steinmetz resumed Eruv construction on or about June 21, 2017 and proceeded to affix approximately 120 lechis to utility poles under the full-time supervision of Township Police.  Annexed hereto as Exhibit F are three police invoices, marked "paid in full" and reflecting a zero balance, establishing that the Vaad haEruv paid $2,525.38 to the Mahwah Police Department for the supervision provided by Township Police during four days in June, 2017, as required by the Agreement.

45.     As a result of the Eruv, observant community members who live within this newly enclosed area have been able to more fully practice their religion on the Sabbath for the past five weeks.

46.    If any of the lechis that have already been put up in Mahwah are removed, the Eruv would become invalid and Plaintiffs and other similarly-situated members of the observant Jewish community will no longer be able to carry their belongings on the Sabbath – or push a

wheelchair or a stroller – as they have been able to since the Eruv was completed approximately five weeks ago.

### III.   MAHWAH THREATENS TO INTERFERE WITH THE ERUV DUE TO ANTI-SEMITIC BACKLASH.

47.    Plaintiffs' attempts to expand the eruv have been met with hostility and rank prejudice.  A vicious and discriminatory campaign against the Eruv expansion was launched by a vocal minority of residents in both Mahwah and adjacent towns, including through various social media outlets, as well as the "Petition to Protect the Quality of Our Community in Mahwah." Public comments posted on this "Petition" include the following, openly anti-Semitic statements:

- "Get those scum out of here."
- "They are clearly trying to annex land like they've been doing in Occupied Palestine. Look up the satanic verses of the Talmud and tell me what you see."
- "Our town is such a great place and if these things move in they will ruin it. They think that can do whatever the hell they want and we'll be known as a dirty town if they move in.  Please keep them out…"
- "I don't want these rude, nasty, dirty people who think they can do what they want in our nice town."
- "I don't want my town to be gross and infested with these nasty people."
- "I do not want these things coming into my town and ruining it."

48.    On information and belief, Mayor Laforet and Township Councilman David May were sent a message from a Township resident on social media demanding that "we must act on this NOW before they begin to take over the town . . . . They ARE a virus!  And once they start spreading, there's no stopping them."  These and many other shockingly anti-Semitic statements from Eruv opponents have proliferated on social media, finding expression on Facebook groups such as "Mahwah Strong" and "Concerned Mahwah Citizens."

15

49.    Some recent social media posts have even overtly threatened vandalism, *e.g.*, "[i]f I see one of those, I'm tearing it down. I propose others do the same. They are out to destroy our county just as they continue to take over Rockland." Sadly, these were not idle threats—on July 24, 2017, the Eruv was vandalized in at least four places.[5] Upon information and belief, certain lechis were vandalized yet again on or around August 11, 2017. Other posts overtly threaten violence against Orthodox Jews who depend on the Eruv, *e.g.*, "we have Smith and Wesson. This battle has only just begun. People won't stand for this anymore."

50.    In the July 21 Letter from Michael J. Kelly, Administrative Officer for Mahwah's Department of Land Use and Property Maintenance, the Township next alleged – contrary to controlling precedent in *Tenafly* and every other case that has considered an eruv challenge – that the Eruv violated a local sign ordinance precluding signs affixed to utility poles. Among other things, Mr. Kelly demanded that "[y]ou must commence the removal of the eruv no later than July 28, 2017 and must complete the removal of all eruv no later than August 4, 2017." Mr. Kelly further threatened "that summonses be issued" should the Township's unilateral deadline for removal "not be met." A copy of the July 21 Letter is annexed hereto as Exhibit G.

51.    Notably, Mr. Kelley's letter flatly contradicts Mayor Laforet's prior official statement, issued just two days earlier, advising that Mahwah had no basis to demand that Plaintiffs take down the lechis, which Plaintiffs had constructed under valid licenses with the Utility Company and with the paid supervision of Township police.

52.    The Township's attempt to invoke a plainly inapplicable Zoning Ordinance concerning "signs" was not only misplaced but discriminatory in its application. Upon

---

[5] *See* Paul Milo, *Mahwah Investigating Damage to Jewish Eruv as Bias Crime*, *available at* http://www.nj.com/bergen/index.ssf/2017/07/mahwah_investigating_damage_to_jewish_eruv_as _hate.html

information and belief, the Township has permitted numerous signs and other objects far more obtrusive than the lechis to remain on utility poles throughout Mahwah.  Illustrative examples of such signs affixed to utility poles in Mahwah – including a "For Sale" sign, a commercial roofing sign, a lost dog sign, a lost cat sign, a garage sale sign, and an oversized address marker – are annexed hereto as Exhibit H.

53.     Mahwah has further targeted the lechis by proposing to enact Township Ordinance No. 1812 in the immediate lead-up to a special Township meeting about the Eruv. This proposed ordinance would make it unlawful for any person to "[p]ost or affix any sign, advertisement, notice, poster, paper, device, *or other matter* to any public utility pole, shade tree, lamp post, curbstone, sidewalk, or upon any public structure or building, except as may be authorized or required by law."  *See* Township of Mahwah Ordinance No. 1812, "An Ordinance Amending and Supplementing Chapter XV 'Streets Sidewalks and Sanitation' of the Revised General Ordinances of The Township of Mahwah, Subchapter 15-1 'Impediments' to Add a New Section 15-1.3 'Unlawful Acts.'"[6]

54.     The discriminatory, hostile, and prejudicial intent of this proposed ordinance is all-too-obvious: not only was the ordinance introduced in the midst of a raging backlash in Mahwah against the Eruv and its Orthodox Jewish proponents, Town Council President Hermansen expressly acknowledged on social media that "when I found out about the items . . .

---

[6] Nor is the Eruv the only instance in which the Township has attempted to illegally target Orthodox Jews in recent months.  On June 29, 2017, Mahwah passed an ordinance purportedly prohibiting non-residents – but in practice only Orthodox Jews – from accessing Township parks.  The park ordinance's discriminatory intent was so flagrant that Bergen County Prosecutor Gurbir S. Grewal directed Mahwah Police Chief James Batelli not to enforce the ordinance in light of the grave legal and civil rights concerns that it implicates.  Prosecutor Grewal's directive to Mahwah Police is annexed hereto as Exhibit I; *see also* Svetlana Shkolnikova, *Prosecutor: Mahwah Park Ban Could Illegally Target Jews*, THE BERGEN RECORD (July 28, 2017), *available at* http://www.northjersey.com/story/news/bergen/mahwah/2017/07/28/prosecutor-mahwah-park-ban-could-illegally-target-jews/517984001/.

on our utility poles . . . [w]e started researching all the different places in different towns that

have been affected by this issue . . . [and] then started working on the ordinances and looking at

ordinances that would be effective [in] our township."  Not surprisingly, then, the proposed

ordinance directly tracks an unconstitutional ordinance passed by the neighboring Borough of

Upper Saddle River in October 2015, which was similarly passed with the intent of preventing an

Eruv from expanding into that municipality.  Notably, by the time Mahwah introduced Township

Ordinance No. 1812 on or about July 25, 2017, Plaintiffs' counsel had already written Upper

Saddle River to warn it that the Borough's ordinance was unconstitutional given that it was

passed with the intent to discriminate against a particular religious group and/or with religious

affiliation in mind.  Plaintiffs have since sued Upper Saddle River seeking relief against the same

unconstitutional action that Mahwah now threatens.

55.     On July 26, 2017, Plaintiffs' counsel wrote to Mayor Laforet and Mr. Kelley

advising them that the Township's actions were unconstitutional and violate several federal

statutes.  A copy of Plaintiffs' letter is annexed hereto as Exhibit J.

56.     The next day, at the Township Council's first public meeting to discuss Township

Ordinance No. 1812, the Council's attorney preemptively warned attendees that the Township

would not tolerate references to the Eruv or remarks regarding Orthodox Jews, lest such

comments create a record that could be used against the Township in litigation.  Despite this

admonishment, the Council permitted numerous residents to express derisive and hateful

sentiments against those that would benefit from the Eruv.

57.     By contrast, the Council suppressed any remarks from pro-Eruv attendees, such as

a representative of the Simon Wiesenthal Center (an organization that exists to promote tolerance

and dignity, and confront anti-Semitism), an elderly Holocaust survivor who sought to warn

about the dangers of unchecked religious intolerance, and a vice-chair of Teaneck's Planning Board who sought to question, without regard to religion, how the proposed "zoning" ordinance could withstand the Third Circuit's decision in *Tenafly*.

58. At an August 10, 2017 Town Council meeting, the Township went even further.  The Town Council almost immediately went into closed session, and upon returning passed a motion authorizing the Township's zoning officer to issue summonses, beginning as of August 18, 2017, for each lechi as a purported "violation" of a facially inapplicable "sign" ordinance. Disregarding Mayor Laforet – who urged the Town Council to stay any action for two weeks to allow discussions with Plaintiffs to proceed, including a meeting that was already scheduled to take place on August 15 – the Town Council passed the motion anyway, scuttling any hopes for an amicable resolution.  To raucous applause, Town Council President Hermansen incorrectly deemed this to be a "Rockland County issue" and "a New York problem," rather than a reasonable accommodation of Plaintiffs' constitutional rights.

59.     If the Township follows through on its threats and official action, then with each passing week community members will be deprived of the ability to fully and freely practice their religion on the Sabbath, constituting immediate and irreparable injury.

## IV.     ERUVIN HAVE BEEN UNIVERSALLY UPHELD BY THE COURTS.

60.     This is not the first time that the creation of an eruv has been challenged by a municipality in the face of religious animus.  Every court to have considered the matter, including the Third Circuit Court of Appeals, has determined that the creation of an eruv, including through the utilization of public utility poles for the attachment of lechis, is a reasonable accommodation of religious practice under the Free Exercise Clause.  *See Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 176 (3d Cir. 2002), *cert. denied* 539 U.S. 942 (2003); *see also ACLU of N.J. v. City of Long Branch*, 670 F. Supp. 1293, 1295 (D.N.J. 1987);

*Smith v. Cmty Bd. No. 14*, 128 Misc. 2d 944, 946-48 (Sup. Ct. Queens Cnty. 1985), *aff'd*, 133 A.D.2d 79 (N.Y. App. Div. 2d Dep't 1987).

61.     Following *Tenafly*, there was a multi-year litigation against the municipalities of Westhampton Beach, Quogue, and Southampton, NY.  The New York state and federal courts, including the Second Circuit Court of Appeals, repeatedly ruled in favor of the creation of an eruv, finding, among other things, that the creation of an eruv is a constitutional exercise of religious freedoms and a "[n]eutral accommodation of religious practice," (*see Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 395 (2d Cir. 2015)); that utility companies have the authority to enter into contracts for the attachment of lechis to poles (*see Verizon New York, Inc., et al. v. The Village of Westhampton Beach, et al*., 11-cv-00252, 2014 WL 2711846 (E.D.N.Y. Jun. 16, 2014)); and that lechis are not signs for the purpose of town sign ordinances, and municipalities have affirmative duties to accommodate religious uses of utility poles (*see East End Eruv Ass'n v. Town of Southampton, et al*., No. 14-21124, 2015 WL 4160461 (Sup. Ct. Suffolk Cty., June 30, 2015)).

<u>FIRST CLAIM FOR RELIEF</u>
(U.S. Const.)

62.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 61 as if fully set forth herein.

63.     Plaintiffs have a constitutional right under the First and Fourteenth Amendments to the United States Constitution freely to practice their religion.

64.     Without an Eruv in the parts of Mahwah that border Rockland County, New York, Plaintiffs and other observant Jews cannot freely practice their religion because they cannot carry objects, or push baby carriages, strollers or wheelchairs to synagogue on the Sabbath and Yom Kippur.

65.     The object, motivation, and effect of the actions of the Township is to suppress the religious practices of the Plaintiffs and certain other Jews who reside in Airmont and other parts of Rockland County.  These actions have specifically targeted Jewish citizens, as the laws that the Defendant seeks to invoke to prevent the establishment of the Eruv are not enforced against citizens of other faiths with consistency or regularity.

66.     The Eruv presents no aesthetic, safety, traffic, fiscal, or other concern to Mahwah. There is, therefore, no compelling State interest in ordering the removal of the lechis in Mahwah that form the Eruv.

67.     The Defendant's actions deny Plaintiffs their rights to freely practice their religion in violation of the First and Fourteenth Amendments to the United States Constitution.

68.     As a result of the actions of the Defendant, and if Defendant proceeds with the takedown of lechis that form the Eruv and/or issues unlawful summonses in connection therewith, Plaintiffs will be irreparably harmed.

<u>SECOND CLAIM FOR RELIEF</u>
(42 U.S.C. § 1983)

69.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 68 as if more fully set forth herein.

70.     The plaintiffs have a constitutionally protected right under the First and Fourteenth Amendments to the United States Constitution to freely practice their religion.

71.     Defendant has acted under color of State Law to deprive plaintiffs of their rights, privileges or immunities secured by the Constitution and the laws of the United States in violation of 42 U.S.C. § 1983.

72.     Defendant's actions were motivated by intent to interfere with Plaintiffs' civil rights, and Defendant was at all times aware that it was acting in violation of federal laws.

73.     As a result of the actions of the Defendant, and if Defendant proceeds with the takedown of lechis that form the Eruv and/or issues unlawful summonses in connection therewith, Plaintiffs will be irreparably harmed.

THIRD CLAIM FOR RELIEF

(42 U.S.C. § 2000cc)

74.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 73 as if fully set forth herein.

75.     Defendant's actions in impeding the establishment of the Eruv constitute the imposition or implementation of a land use regulation within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(1).

76.     The utility poles at issue are undisputedly the personal property of the Utility Company, and licenses to use such property constitute a "property interest" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(5).

77.     Defendant's actions substantially burden the religious exercise of observant Jews who wish to freely practice their religion while observing religious proscriptions against carrying objects, or pushing baby carriages, strollers or wheelchairs to synagogue on the Sabbath and Yom Kippur.

78.     Defendant's actions do not further a compelling government interest and, in any event, they are not the least restrictive means of furthering any such interest.

79.     Defendant's actions were motivated by intent to interfere with Plaintiffs' constitutional and civil rights, and Defendant was at all times aware that it was acting in violation of federal laws.

80.     Defendant has chosen to selectively enforce the laws or ordinances under which it seeks to prevent the establishment of the Eruv, in a way that constitutes the imposition or

22

implementation of a land use regulation in a manner that treats a religious assembly or institution

on less than equal terms with a nonreligious assembly or institution.

81.    Defendant's actions are in violation of RLUIPA.

FOURTH CLAIM FOR RELIEF

(Declaratory Judgment)

82.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 81

as if fully set forth herein.

83.    Defendant has taken the position that certain local and/or state laws prohibit

affixing lechis to the utility poles in Mahwah and that Defendant's approval is required for

affixing lechis to such poles.

84.    Plaintiffs have taken the position that there is no legal or factual basis for

Defendant's positions.

85.    By virtue of the foregoing, there now exists an actual, justiciable controversy

between Plaintiffs and Defendant relating to their respective legal rights, duties, and obligations,

which controversy is ripe for adjudication pursuant to 28 U.S.C. § 2201.

86.    Declaratory relief will settle the legal issues between the parties set forth in the

above-referenced letters, and finalize the controversies described in those letters.

87.    Plaintiffs thus request a judgment declaring the rights and obligations of the

parties, including a declaration that (a) there is no local, state, or federal law that either prohibits

the affixation of the lechis to utility poles in Mahwah, or that requires municipal approval for

such attachments, including a declaration that (i) no Township Zoning Ordinances prohibit

affixing the lechis to Utility Company poles, and (ii) proposed Township Ordinance No. 1812, if

enacted, may not be enforced so as to prevent Plaintiffs from maintaining the Eruv, and (b) that

the private parties should therefore be free and clear to implement contracts to construct the Eruv.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant as follows:

A.      On the First Claim for Relief, immediately, preliminarily, and permanently enjoining Defendant from removing any lechis that form the Eruv, and also enjoining Defendant from taking any action which would prevent Plaintiffs from affixing further lechis to the Utility Company's utility poles or otherwise constructing and maintaining the Eruv that already exists.

B.      On the Second and Third Claims for Relief, (1) permanently enjoining Defendant from continuing to engage in the discriminatory practices alleged therein; (2) and permanently enjoining Defendant from taking any actions which would prevent Plaintiffs from affixing lechis to the Utility Company's utility poles or otherwise constructing and maintaining the Eruv that already exists.

88.     On the Fourth Claim For Relief, entering a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (a) there is no local, state, or federal law that either prohibits the affixation of the lechis to certain poles in Mahwah, or that requires municipal approval for such attachments, including a declaration that proposed Township Ordinance No. 1812 may not be enforced so as to prevent Plaintiffs from maintaining the Eruv, and (b) that the private parties should therefore be free and clear to implement contracts to construct the Eruv.

C.      Awarding the costs of this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

D.      Awarding such other and further relief as this Court deems appropriate.

Dated:    New York, New York
            August 11, 2017

*/s/ Diane P. Sullivan*
Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
(609) 986-1120
diane.sullivan@weil.com

Robert G. Sugarman (*pro hac vice pending*)
Yehudah Buchweitz (*pro hac vice pending*)
David Yolkut (*pro hac vice pending*)
Jessie Mishkin (*pro hac vice pending*)

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
robert.sugarman@weil.com
yehudah.buchweitz@weil.com
david.yolkut@weil.com
Jessie.mishkin@weil.com

*Attorneys for Plaintiffs*